**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MALACHI M. C. WATTS | CASE NO. 1:25-CR-57-HAB-ALT |

**OPINION AND ORDER**

The Government indicted Defendant, Malachi Watts ("Watts") in a four count indictment charging him with two counts of making a false statement in connection with the acquisition or attempted acquisition of a firearm, in violation of 18 U.S.C. §922(a)(6) and 924(a)(2) (Counts 1 and 2); and two counts of making a materially false, fictitious, and fraudulent statement in an official ATF criminal investigation, in violation of 18 U.S.C. §1001(a) (Counts 3 and 4). (Indictment, ECF No. 1). Watts pleaded guilty to Counts 2 and 3 pursuant to a written plea agreement in exchange for dismissal of Counts 1 and 4 and a low-end guideline recommendation. (Plea Agreement, ECF No. 24). Following his guilty plea, probation prepared a draft presentence investigation report (ECF No. 35) and a Revised PSR (Revised PSR, ECF No. 45)[1]. Watts objected to the probation officer's calculations, and the Court ordered a briefing schedule. (ECF Nos. 38, 40). Briefing is now complete (ECF Nos. 41-44) and the objections are ripe for consideration. For the following reasons, the Defendant's objections are OVERRULED.

[1] The Revised PSR made one change to ¶ 27 to correct the date contained in that paragraph. The original PSR showed the date as June 7, 202**4** when, in fact, the date should have been June 7, 202**5**. Because this was the only change in the PSR versions, the Court considers the Defendant's objections to the original PSR to apply to the Revised PSR.

## DISCUSSION

### A. Background

The underlying offense conduct is summarized in paragraphs 7-38 of the Revised PSR. The parties have not disputed that recitation of the facts, and the Court incorporates it herein, noting specifically the following offense-related conduct:

On June 5, 2025, police in Concord, North Carolina recovered a Taurus, model GX2 9mm pistol, SN AGN675315, during a search warrant issued in a vice investigation of confirmed gang member and felon Derrick Smith. A trace of that firearm revealed that Watts purchased the firearm on February 9, 2025, in Fort Wayne, Indiana. Watts was born in North Carolina and lived in Concord before moving to Fort Wayne. It is the investigation into that recovered firearm that led to the charges in this case, with Watts's ever-shifting and often confusing narratives forming the bases for Counts 3 and 4 as well as the obstruction enhancement. From this point forward, the factual recitation focuses on how the investigation progressed based on information the agents obtained.

After the firearm was recovered in North Carolina, agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") obtained ATF 4473 forms completed by Watts at Freedom Firearms, a licensed federal firearms dealer ("FFL") in Fort Wayne, Indiana. These forms correspond with multiple firearms purchases, beginning with the February purchase of the Taurus recovered in Concord. Watts purchased three additional firearms from Freedom Firearms, all Taurus, model GX2, 9mm caliber pistols, on April 12, 2025 (1 firearm), and June 7, 2025 (2 firearms). For each of these purchases, Watts listed an address of 3114 Covington Manor Rd.[2]

[2] Agents obtained a copy of Watts's driver's license used for the February purchase, which showed the Covington Manor address.

Watts was living at this address for both the February and April purchases. Agents learned, however, that Watts was not living at that address for the June purchases and instead was living at an address on Amity Drive in Fort Wayne.[3] The use of the Covington Manor address for the June purchases is the basis for the false statement in connection with the purchase of a firearm alleged in Count 2.

On July 11, 2025, ATF agents attempted contact with Watts at the Amity Drive address. Watts did not answer, so the agents left a business card. Later that day, Watts contacted the agents by text telling them, "All my guns are not with me they have been stored in the safe located in South Carolina." This statement was later determined to be false and is the basis for Count 3.

Agents contacted Watts via telephone on July 14, 2025, and advised Watts they would like to speak with him in person. After multiple attempts to meet in person failed, agents eventually conducted a telephone interview on July 25, 2025, during which Watts told ATF Special Agent Nichole Marquez ("SA Marquez") the following information:

- He purchased four Taurus GX2 pistols between February and June 2025 from Freedom Firearms in Fort Wayne, IN;
- He really liked the Taurus GX2 pistol he purchased in February and bought a second one in April but it was stolen while he visited his family in Concord, NC;
- He reported the firearm stolen and the Concord Police Department contacted him to advise him that his firearm was recovered and he could pick it up;

[3] On May 12, 2025, Watts' ex-girlfriend Deana Smith ("Deana"), called the Allen County Police Department and reported that Watts was threatening suicide because the two were breaking up. She advised Watts lived at the Amity Drive address. Watts and Deana also share a child together.

Agents went to the leasing office of Camden Park Apartments, the apartment complex for the Amity Drive address. They also obtained a lease agreement for the Amity Drive address listing both Watts and Deana as lessees. The lease shows a move-in date of April 24, 2025, and a move out date of July 14, 2025. Both Watts and Deana were living at the residence.

Recall also that the firearm was recovered during a search warrant related to Derrick Smith. The Court has no information that Derrick Smith and Deana are related despite having the same, albeit common, last name.

- After his second firearm was stolen, he purchased two more Taurus GX2s – one for himself and one that he transferred to a friend, Dylan Stambaugh ("Dylan"). Watts stated that he did the appropriate transfer paperwork to transfer the firearm to Dylan.[4]

Following this interview, the agents' investigation led them to believe that Watts had not been truthful. For instance, agents contacted the Concord Police Department and learned that Watts had not reported any firearm stolen, and the recovered firearm was the first firearm purchased in February, not the second firearm purchased in April as Watts suggested.

Also during the July 25 phone interview, agents reminded Watts that he had sent a message to them stating that his firearms were "in a safe in South Carolina." Watts then explained that he gave the first firearm to his brother, Chance Carter ("Carter"), after Watts went to court for a domestic battery case and was served with a protection order.[5] According to Watts, Carter visited Fort Wayne sometime in June 2025. Watts also told investigators he believed Carter lived in South Carolina and provided a contact number for Carter, with a North Carolina area code.[6] Agents verified that the phone number was a valid number for Carter and attempted phone contact with him. The agents' call went to voicemail and they left a message asking for a call back which went

---

[4] Agents interviewed Dylan on July 25, 2025. During the interview, Dylan told agents he purchased one of Watts's firearms, Taurus GX2 SN ACH844142 (one of the two June purchases from Freedom Firearms), on June 12, 2025, for $285.99. Dylan paid using Zelle and had a bill of sale from Watts. That information is contained in more detail in the PSR.

[5] On June 8, 2025, Deanna called the ACPD to report that Watts hit her in the mouth. Officers spoke with Deana at her apartment that she shared with Watts at the Amity Drive address. Watts confirmed that he gave Deana a "love tap" and was arrested and charged with misdemeanor domestic battery, case no. 02D05-2506-CM-2143. Watts's address shows the Amity Drive address. His initial hearing for this charge was on June 30, 2025. He was personally served with a protective order that states he is "Brady disqualified" and "the Defendant is ordered to have no firearms, deadly weapons or ammunition in his/her possession…Pursuant to 18 U.S.C. 922(g), once a respondent has received notice of this order and an opportunity to be heard, it is a federal violation to purchase, receive or possess a firearm while subject to this order if the protected person is … (B) A current or former person with whom the respondent resided while in an intimate relations; or (C) A person with whom the respondent has a child."

[6] Title 18 U.S.C. §922(a)(5) prohibits the transfer of a firearm to an out of state resident by an individual. Agents suspect that Watts gave the firearm to Carter sometime in February (not June) since the first firearm was recovered in North Carolina on June 5, 2025. That suspicion has not been established by a preponderance of the evidence.

unreturned. Additional investigation of Carter revealed that he lives in North Carolina and has a vehicle registered to him with an address in Concord, NC. Likewise, Watts's firearm narrative did not add up—agents found no reliable intel that Carter was in Fort Wayne during that time[7] and the first firearm was recovered on June 5, 2025, nearly four weeks before Watts was served the protective order.

Agents further learned that on June 7, 2025 — the same day Watts purchased the two June firearms from Freedom Firearms—Watts and Dylan had also visited Sportsman's Warehouse, a different FFL, and attempted to purchase a Taurus GX2. Watts filled out the 4473 form and checked the "No" box when asked if he was the actual transferee/buyer of the firearm. Sportsman's Warehouse suspected that Watts was attempting to purchase the firearm for Dylan, who appeared to them underage. For this reason, they declined the transaction. No NICS check occurred, the form was voided, and his purchase was denied.[8] Watts also listed the Covington Manor address on the 4473 form, knowing that he no longer resided there. This conduct forms the basis for the false statement in the attempted acquisition of a firearm alleged in Count 1.

Based on the above facts, the probation officer assessed Watts with a base offense level of 12, under U.S.S.G. §2K2.1(a)(7). Watts received two levels under U.S.S.G §2K2.1(b)(1)(A) because the offense involved 3-7 firearms; and two levels under U.S.S.G. §3C1.1 because Watts willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice in connection with the offense of conviction and relevant conduct. After a three-level reduction under § 3E1.1 for timely acceptance of responsibility, the Revised PSR recommended a total

---

[7] Agents listened to a June 29, 2025, jail call from Watts to Carter where Carter tells Watts, "you my brother an all…and I care about you, but like I cannot come down there because I'm the only one working…" SA Marquez queried Carter's license plate with license plate readers in and around Fort Wayne and found no hits. For this reason, agents do not believe Carter was in Fort Wayne in June as Watts suggested.

[8] At the time, Dylan was 19 and would not have been permitted to purchase a firearm from an FFL.

offense level of 13 and a criminal history category of II. These calculations yielded an advisory guideline range of 15 to 21 months of imprisonment.

**B. <u>Analysis</u>**

Watts timely objected to both enhancements. "The government bears the burden of establishing the applicability of a sentencing enhancement by the preponderance of the evidence." *United States v. Henderson*, 88 F.4th 534, 536 (4th Cir. 2023). "This burden simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *United States v. Patterson*, 957 F.3d 426, 435 (4th Cir. 2020) (internal quotation marks omitted).

**1. *The enhancement under U.S.S.G. §2K2.1(b)(1)(A) was properly applied.***

U.S.S.G §2K2.1(b)(1)(A) applies an enhancement to the base offense level based on the number of firearms involved in the offense. Here, Watts received a two-level enhancement because the offense involved between 3-7 firearms. In reaching this conclusion, the probation officer counted the two firearms involved in Count 2 as well as the firearm from the voided transaction that formed the basis of Count 1. Watts objects to the counting of the firearm from the voided transaction because the "dealer did not transfer the firearm. No firearm was acquired. No firearm was possessed. No firearm was distributed." (ECF No. 43 at 2). In response, the Government points to the address Watts listed on the Sportsman's Warehouse form to show that he attempted to make a purchase by making a false statement as stated by the charge in Count 1.

Under the Guidelines, "offense" means "the offense of conviction and all relevant conduct under § 1B1.3." *Id.* § 1B1.1 cmt. n.1(I). As applicable here, "relevant conduct" includes "all acts and omissions committed ... or willfully caused by the defendant" "that were part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.* § 1B1.3(a)(1), (2). Further, the commentary to U.S.S.G. §2K2.1 directs a court to count all firearms that were

"unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed, including any firearm that a defendant obtained or attempted to obtain by making a false statement to a licensed dealer." U.S.S.G. §§ 2K2 .1(b)(1)(A), 2K2.1 cmt. n.5.

In this case, Watts is hard-pressed to argue that the conduct in Count 1 is not relevant conduct or part of the "same course of conduct or common scheme or plan as the offense of conviction." While he did not actually receive a firearm from Sportsman's Warehouse, he did make a false statement to a licensed dealer in an attempt to obtain one. The fact that he was truthful "some of the time" is of no consequence for guidelines purposes. Indeed, it would seem logical that all purchasers tell the truth somewhere on the form; but when they knowingly make a materially false statement to an FFL on the ATF Form in an attempt to purchase a firearm, they open themselves up to federal inquiry. The fact that matters here is that Watts made a false statement on form 4473 when he used an address that was not his current address. Watts cites no authority excepting firearms that were not transferred from the firearm count in §2K2.1, and this Court has found none. Accordingly, based on the plain language of the enhancement combined with the offense conduct here, the officer properly assessed the two-level enhancement because the offense involved three firearms.

**2. *Watts significantly impeded the investigation of his offenses thereby warranting the §3C1.1 enhancement***

A sentencing court may apply the obstruction enhancement when a defendant: (1) "willfully obstructed or impeded, or *attempted* to obstruct or impede, the administration of justice with respect to the investigation ... of the instant offense of conviction," and (2) "the obstructive conduct related to the defendant's offense of conviction and any relevant conduct." U.S.S.G. § 3C1.1 (emphasis added). Watts argues that this enhancement should not apply because his false

statements were not made under oath and the Government has failed to show that his false statements significantly impeded the official investigation.[9]

The comments to the obstruction guideline state "*[o]rdinarily* ... making false statements, *not under oath* to law enforcement officers"—as was the case here—does not warrant application of the enhancement. U.S.S.G. § 3C1.1 cmt. n.5(B) (emphases added). But the comments further state that "providing a materially false statement to a law enforcement officer that *significantly* obstructed or impeded the official investigation" does warrant application of the enhancement, regardless of whether the materially false statement was made under oath. *Id.* cmt. n.4(G) (emphasis added). And the express text of the obstruction guideline covers "attempted" obstruction of justice, indicating that application of the guideline is appropriate, at least in some circumstances, even when a defendant's attempted obstruction did not in fact result in the obstruction of an investigation. *Id.*

The Government points to the statements in Watts's July 25, 2025, interview regarding the location and disposition of firearms as evidence supporting the enhancement. It argues that because of Watts's false statements in that interview, agents were forced to go through several wild goose chases to determine whether Watts was truthful. At the very least, the Government says Watts's contradictory statements to investigators constituted an attempt to obstruct justice, for purposes of the enhancement.

Watts does not dispute that agents expended resources attempting to locate and interview Carter and that they queried license plate readers, listened to jail calls, and attempted contact with

---

[9] Watts also notes an inconsistency within the Revised PSR. At paragraph 44, the Revised PSR reads: "[t]he probation officer has no information indicating the defendant impeded or obstructed justice." But at paragraph 52, the two-level enhancement was applied. Regardless of this inconsistency, the Court finds that the Government has met its burden to establish the applicability of the enhancement.

Carter based on Watts's representations to them. Similarly, he admits agents expended their resources to try to verify Watts's story that he reported the firearm recovered in North Carolina stolen. Certainly Watts attempted to throw agents off his trail with all of his false and misleading statements. While these types of false statements are not the most egregious the Court has had before it, the Government has met its burden to show that Watts willfully made false statements to them that attempted to, or did, significantly burden law enforcement in the investigation and prosecution of his offenses. *See United States v. Kroledge,* 201 F.3d 900 (7th Cir. 2000); *United States v. Davis,* 442 F.3d 1003 (7th Cir. 2006). For this reason, the enhancement is properly applied.

## CONCLUSION

Based on the above, the Defendants' objections to the Revised PSR are OVERRULED. The Court will set a sentencing hearing by separate entry.

**SO ORDERED** this 12th day of November 2026.

s/Holly A. Brady
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT